IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 14-01400 (ESL)

LUIS A. CARRASQUILLO GONZALEZ            CHAPTER 13

    Debtor

LUIS A. CARRASQUILLO GONZALEZ            ADV. PROC. NO. 14-00250 (ESL)

    Plaintiff

      vs.

PUERTO RICO TREASURY
DEPARTMENT, *ET AL.*

    Defendants

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion to Dismiss* (Docket No. 12) filed by the Treasury Department of Puerto Rico (the "PR Treasury Department") alleging that it did not violate the automatic stay because the tax notices it sent to the Plaintiff fall under the exceptions of 11 U.S.C. § 362(b)(9)(D).  Also before the court is the Plaintiff's *Opposition* alleging that "the collection letter sent to [him] does not fall [under the exceptions afforded in 11 U.S.C. § 362(b)(9)]; it is not an audit, or a notice of tax deficiency or a demand for a tax return or an assessment for tax, it is a collection of a pre-petition tax debt accompanied by threat and coercion" (Docket No. 22, p. 6).  For the reasons stated below, the *Motion to Dismiss* is hereby denied in part and granted in part.

Procedural Background

On February 27, 2014 the plaintiff filed the instant Chapter 13 Bankruptcy petition.  See Lead Case Docket No. 1.  The PR Treasury Department was included in both the master address list and in *Schedule E* (Creditors Holding Unsecured Claims) of the Bankruptcy Petition in regards to the Plaintiff's pre-petition tax liability for the year 2013 in the amount of $933.00. Id.

-1-

On August 6, 2014, PR Treasury issued a *Final Notice* to the Plaintiff regarding his income tax debt for tax year 2013 informing him that he had a tax debt in the amount of $1,0603 (including principal and surcharges) and that in order to avoid the accrual of additional interest and surcharges, he should send such payment within 15 days. The letter also stated as follows:

> We remind you that the law empowers the Secretary of the Treasury to use for the collection steps, mechanisms such as the embargo of personal property (including banking account; garnish of 25% of the wages of the taxpayer or real estate property with their auction afterward. Also, it can order the withholding of payments if you are the supplier or goods or services to the Government of Puerto Rico and to report this to the Credit Bureau. This may affect your credit standing, so we urge you to pay prompt attention to this matter.

Docket No. 18-1, p. 2.

On August 25, 2014, the PR Treasury Department filed *Proof of Claim No. 10-1* in the priority amount of $933.00.

On October 22, 2014, the Plaintiff filed the instant adversary proceeding alleging that the *Final Notice* issued by the PR Treasury Department violated the automatic stay and thus claims actual damages in an amount no less than $10,000 and punitive damages in an amount no less than $25,000, plus costs and attorneys' fees. See Docket No. 1.

On January 20, 2015, the PR Treasury Department filed a *Motion to Dismiss* arguing that the *Final Notice* falls under the exceptions afforded in 11 U.S.C. § 362(b)(9), which warrants the dismissal of the instant adversary proceeding.

On January 27, 2015, the court entered an *Order* that reads as follows:

> This adversary proceeding is before the court upon the motion to dismiss filed by the defendant, the Treasury Department of Puerto Rico. After reviewing the same, the court concludes that the facts and legal conclusions *prima facie* support the request for dismissal on the grounds that the complaint fails to plead a claim upon which relief may be granted. In view of the foregoing, the debtor/plaintiff is hereby ordered to show cause within 30 days why the complaint should not be dismissed and judgment entered accordingly. Upon failure to timely reply, the motion will be granted. The pretrial scheduled for February 13, 2015 is continued without a date, pending a decision on the motion to dismiss.

Docket No. 14.

On March 18, 2015, the Plaintiff filed an *Opposition to [] Motion to Dismiss* alleging that the *Final Notice* "does not fall [under the exceptions afforded in 11 U.S.C. § 362(b)(9)]" because "it is not an audit, or a notice of tax deficiency or a demand for a tax return or an assessment for tax, it is a collection of a pre-petition tax debt accompanied by threat and coercion" (Docket No. 22, p. 6).  The Plaintiff also requested the court to find the PR Treasury Department liable for the violation of the automatic stay.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2).  Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

### Applicable Law and Analysis

*(A)    Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Bankr. P. 7056; In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  10A Wright, Miller & Kane, Federal Practice and Procedure 3d § 2712, p. 198.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. at 202-203.  Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

-3-

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Catrett, 477 U.S. at 322.  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  See López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may

not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. See López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See Adickes, 398 U.S. at 159.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane, Federal Practice & Procedure: Civil 3d § 2737. Amended subsection (a) of Fed. R. Civ. P. 56 now includes express authority for judgment on less than the entire case denominating it in its subsection title as "Partial Summary Judgment", which allows summary judgment "upon all or any part" of a claim or defense by any party.

In the instant case, the uncontested facts are supported from the uncontested documents in the record.

*(B) Automatic Stay under 11 U.S.C. § 362(a)*

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy Code. It gives the debtor a "breathing spell" from creditors and stops all collection efforts, all harassment, and all foreclosure actions. H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97. Also see ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982). "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy." Id. at 977. Section 362 of the Bankruptcy Code provides that upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, *inter alia,* the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim

against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case..." 11 U.S.C. §§ 362(a)(1) and (a)(6). "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted). "Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8][a] (16th ed. 2015). Despite the fundamental importance of the automatic stay, Congress has allowed certain exceptions to the automatic stay, such as those included under Section 362(b) of the Bankruptcy Code. See 229 Main St. Ltd. Pshp. v. Mass. EPA (In re 229 Main St.), 262 F. 3d 1, 3-4 (1st Cir. 2001).

*(C)     Exceptions under 11 U.S.C. § 362(b)(9)*

Section 362(b) of the Bankruptcy Code lists the exceptions of a debtor's right to the automatic stay. Section 362(b)(9) provides an exception to the automatic stay provisions under subsection (a) of Section 362 of the Bankruptcy Code by allowing: "(A) an audit by a governmental unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns; or (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor)." 11 U.S.C. § 362(b)(9). "As amended in 1994, Section 362(b)(9) also permits a governmental unit to conduct an audit to determine tax liability, to

make a demand for tax returns and to make an assessment, issue notice and demand payment of any tax." Alan N. Resnick & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶ 362.05[9] (16th ed. 2013). Section 362(b)(9) limits the impact of Section 362(a)(6) in certain circumstances regarding tax liabilities. See <u>Rosas v. Monroe County Tax Claim Bureau</u>, 323 B.R. 893, 898 (Bankr. M.D. Pa. 2004).

In <u>In re Centeno-Sanchez</u>, 2013 Bankr. LEXIS 137, 2013 WL 140453 (Bankr. D.P.R. 2013) (Lamoutte, B.J.), the court found that the notices sent by PR Treasury Department fell within the exception to the automatic stay afforded in Section 362(b)(9)(D) of the Bankruptcy Code because they were notices that only demanded payment and differentiated them from notices with an intent to levy. The court also found that one of the documents issued by PR Treasury Department was an informative notice by which the taxpayer was informed of the enactment of a new law from which any taxpayer could benefit from by allowing all tax debtors to pay certain types of overdue taxes without having to pay interest, surcharges and/or penalties. The court reasoned that the notices issued by PR Treasury fell within the exception provided in Section 362(b)(9)(D) because the demand for payment were not an intent to levy. <u>Id.</u>

In <u>Otero-Lopez v. Dep't of the Treasury of the Commonwealth of P.R. (In re Otero-Lopez)</u>, 492 B.R. 595, 604 (Bankr. D.P.R. 2013) (Lamoutte, B.J.), however, the court ruled "[t]he exception to the automatic stay afforded in Section 362(b)(9)(D) is not absolute and does not give PR Treasury free leeway to collect, garnish or seize the bankruptcy estate's funds to pay a pre-petition tax debt". Like the *Final Notice* in the instant case (Docket No. 18-1), <u>In re Otero-Lopez</u>, 492 B.R. at 604, analyzed another "Final and Urgent Collections Notice" issued by the PR Treasury Department as follows:

> In that Final and Urgent Collections Notice, PR Treasury indicated to the Plaintiff that if it "fail[ed] to receive payment for the amount owed in full [$421.15] within the next ten (10) days as of th[at] notification, [it] would proceed to use any of the collection mechanisms described above [referring to seizing and auctioning off her personal and real property in an expedited way] and [it would] provide information about [her] debt to the Credit Information Bureau" (Docket No. 30, p. 9). PR Treasury alleges that Notice was "not a collections effort but an

-7-

administrative procedure of the agency" (Docket No. 32, p. 14).  This court is not moved by such argument.

In Jacoway v. Dep't of Treasury (In re Graycarr, Inc.), 330 B.R. 741, 745 (Bankr. W.D. Ark. 2005), the court ruled as follows:

> The Court believes that the Request For Payment falls within the purview of Section 362(b)(9)(D) of the code and is not a violation of the automatic stay.  See Covington v. IRS (In re Covington), 256 B.R. 463, 466 (Bankr. D.S.C. 2000).  However, the IRS's collection actions continued through its Notice of Levy dated May 23, 2005, which was mailed to Arvest Bank.  The mailing of the Notice of Levy constitutes a collection effort by the IRS and advises the taxpayer of specific consequences if payment is not made within a specified period of time. It is not an assessment and demand for payment and is not excepted from the automatic stay by § 362(b)(9)(D).

In In re Covington, *supra,* the debtors filed amended tax returns for six years, which the IRS determined were frivolous.  Accordingly, the IRS mailed a Form 866A document to the debtors which stated "you filed a Form 104X excluding taxable income.  Your claim has been disallowed."  256 B.R. at 464.  The IRS then imposed a "frivolous return penalty" of $500 for each of the returns.  The IRS sent the debtors Form 6335 documents that notified them that they must pay the entire amount of the penalty.  A month later, the IRS sent the debtors Notices of Intent to Levy with pamphlets entitled "Understanding the Collection Process".  Id. at 466.  The IRS contended that the Notice of Intent of Levy was nothing more than a notices of assessment under Section 362(b)(9)(D).  The court found that the six notices informing the debtors of the $500 assessment for each return qualified for the exception set forth at Section 362(b)(9)(D).  Id. at 465-466.  Notwithstanding, the court found that the Notice of Intent of Levy did not constitute an assessment and demand for payment, and concluded that the IRS was in violation of the automatic stay as to those notices:

> These notices dated December 21, 1998 entitled "Notice Of Intent To Levy - You Must Respond Now" evidence more than the making of an assessment by the IRS. These notices, along with the accompanying pamphlet, clearly constitute more that a demand for payment.  These notices constitute a collection effort and advise the debtor of specific consequences if payment is not made within a certain period of time.  They constitute threats which the IRS cannot in fact carry out because of the automatic stay but debtors, at least most debtors, don't know this.  This Court is of the opinion that the notices sent by the IRS to the debtors do not constitute

-8-

an assessment and demand for payment and are not a collection efforts which are excepted from the stay by 11 U.S.C. § 362(b)(9)(D).

In re Covington, 256 B.R. at 466 (citations omitted).

In In re Shealy, 90 B.R. 176 (Bankr. W.D.N.C. 1988), the first notice sent by the South Carolina Tax Commission stated that "demand is made for ... payment" and "if payment is not made a warrant for distraint will be issued." Id. at 179. The court found that this notice contained "strong language threatening issuance of a 'warrant of distraint'" if the debt was not paid. Id. at 179. A subsequent notice sent by the Tax Commission threatened seizure of wages and bank accounts, among others. Id. at 179. The court concluded that the notices were "'junk yard dogs' of tax notices designed for no other purpose than scaring the debtors into paying up before a 'warrant of distraint' is filed." Id. Based upon the content of the notices, the court found that they were more than just a notice of tax deficiency and that its strong threatening language was not exempted under Section 362(b)(9). Id. at 180.

In In re Layton, 220 B.R. 508 (Bankr. N.D.N.Y. 1998), the court was asked to address motions filed by debtors seeking sanctions against Tioga County in three separate cases. Letters were sent to the debtors in each of the three cases notifying them that they owed real property taxes for 1996. The letters provided that if the taxes were not paid by December 10, 1997, Tioga County would file a "Notice and Petition of Foreclosure" which would be published in the local newspapers. 220 B.R. at 511. A subsequent letter also stated that failure to pay the taxes would result in the eventual loss of the debtors' property. Id. at 511. The court found that Tioga County violated the automatic stay by threatening "to publish a notice in the newspapers, file a list of delinquent taxes and file a notice and petition of foreclosure. Due to the content of these letters, the court finds that they are more than mere notices and constitute a demand for payment in violation of the stay." Id. at 516.

In In re LTV Steel Co., 264 B.R. 455 (Bankr. N.D. Ohio 2001), the notices sent by the Minnesota Department of Revenue to the debtor stated that "if [the tax] amount [due was] not remitted immediately, collection action will be initiated with no further notice to you. This may

include levying upon your bank account or other property." Id. at 472. In addition, subsequent notices by the Minnesota Department of Revenue also stated that "immediate payment of [the tax amount due] is demanded. If not paid, tax liens will be filed against you, copies of which are enclosed." Id. at 472. The court found that insofar as the mailings by the Minnesota Department of Revenue "were notices of a tax deficiency, they were indeed not subject to the stay pursuant to Section 362(b)(9)(D). However, Section 362(b)(9) does not allow a taxing authority [like PR Treasury Department] to threaten the seizure of a debtor's property". Id. at 472. Thus, the court concluded that "to the extent that these collection notices threatened seizure of [the debtor's] property, they were not exempted from the automatic stay." Id. at 472.

In In re Curpier, 2009 Bankr. LEXIS 2896 at **17-18, 2009 WL 2929245 at *6 (Bankr. N.D.N.Y. 2009), the court found no violation of the automatic stay by the taxing authority under Section 362(b)(9)(D) because (a) there was no suggestion that it made any efforts to collect the tax due from the debtors, either by seizure or levy of the debtors' property, and (b) there were no allegations of coercion or harassment. Instead, the court weighed that "[i]ts participation in the debtors' case consisted of filing its proof of claim ... and then mailing the Notice and Demand", that is, "[i]t simply took advantage of the exception set forth at Section 362(b)(9)(D) allowing it to send out its Notice and Demand and informing the debtors' of the liability." Id.

The instant case differs from In re Centeno-Sanchez, *supra*, because the *Final Notice* (Docket No. 18-1) constituted a threatened seizure to the Plaintiff, which is not protected by Section 369(b)(9)(D). "The exception to the automatic stay afforded in Section 362(b)(9)(D) applies to notices by PR Treasury that only demand payment **without an intent to levy**". In re Otero-Lopez, 492 B.R. at 606 (emphasis added). "Conversely, post-petition notices that involve threats by a taxing authority to collect, garnish, lien and/or levy the debtor's property to secure pre-petition tax debts do not fall under the exception provided in Section 369(b)(9)(D)". Id.

*(D)     Violation of the Automatic Stay*

The automatic stay imposes on non-debtor parties an affirmative duty of compliance. Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance, Section 362(k)

-10-

of the Bankruptcy Code provides the necessary means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). A willful violation does not require a specific intent to violate the automatic stay. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. at 269.

In the case at bar, the Plaintiff satisfies the first requirement established In re Slabicki, 466 B.R. at 577-578, because, as discussed above, the court finds that the *Final Notice* (Docket No. 18-1) constitutes a threatened seizure that is not protected by the exception afforded in Section 369(b)(9)(D), and consequently, it is a post-petition collection against the debtor of a pre-petition debt under 11 U.S.C. § 362(a)(6).

As to the second requirement, the court also finds that the violation of the automatic stay was willful. There is no dispute that the PR Treasury Department had notice of the filing of the bankruptcy petition and that the Plaintiff listed her pre-petition tax liability with the PR Treasury Department in Schedule E. Thus, the Plaintiff met the burden of demonstrating that he provided the PR Treasury Department with actual notice of the bankruptcy petition. Therefore, the burden shifts to the creditor to prevent violations of the automatic stay. See Fleet Mortgage

Group v. Kaneb, 196 F.3d at 269.  To contest that the violation of the stay was willful, the PR Treasury Department avers that the *Final Notice* was only a "notice" of an assessment for taxes permitted under Section 362(b)(9)(D).  As previously discussed, the *Last Notice* does not fall under the exception provided in Section 369(b)(9)(D).  Therefore, this court "must presume that the violation was deliberate." Fleet Mortgage Group v. Kaneb, 196 F.3d at 269.

Having been demonstrated that a violation to the automatic stay occurred and that it was willful in regards to the *Final Notice*, partial summary judgment can be issued in regards to the PR Treasury Department's liability.  As to the actual damages, a separate hearing shall be held at which the parties may present evidence regarding injury and damages.  See Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F.3d 367, 376 (1st Cir. 2011).

*(E)    Punitive damages*

The Plaintiff seeks punitive damages against the PR Treasury Department under 11 U.S.C. § 362(k) and/or 11 U.S.C. § 105. See Docket No. 1, p. 10, ¶ 46.

Section 362(k) of the Bankruptcy Code provides for the recovery of damages, costs and attorneys' fees by an individual damaged by a willful violation of the automatic stay.  In appropriate circumstances, an individual injured by the violation of the automatic stay may also recover punitive damages if the individual establishes the normal elements of a claim for punitive damages, to wit, egregious activity beyond the pale that was not only willful, but also sanctionable as out of the bounds of normal behavior. See Nancy C. Derher & Joan N. Feeney, Bankruptcy Law Manual, Volume 1 § 7:57 (2014-1).  The court has wide discretion to award punitive damages or not. See Varela v. Quiñones Ocasio (In re Quiñones Ocasio), 272 B.R. 815, 825-828 (B.A.P. 1st Cir. 2002).

The PR Treasury Department argues that pursuant to 42 U.S.C. § 1981a(b)(1), a party may not recover punitive damages against a government, government agency or political subdivision. See the *Motion to Dismiss*, Docket No. 12, pp. 6-7, ¶¶ 21-23.  The argument is misplaced, as that statute refers to actions brought by citizens against the United States under the Civil Rights Act of 1964, not under the Bankruptcy Code. See 42 U.S.C. § 1981a(a).  But

the misplacement of the argument does not mean that the Plaintiff is entitled to punitive damages *ipso jure*.

Puerto Rico is a considered a State for bankruptcy purposes pursuant to 11 U.S.C. § 101(52). The PR Treasury Department is a "governmental unit" pursuant to Section 101(27) of the Bankruptcy Code, which provides as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).

Section 106 of the Bankruptcy Code states that:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

> (1) Section[] ... 362 [automatic stay].

> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages.**  Such order or judgment for costs or fees under this title [11 U.S.C. §§ 101 *et seq.*] or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28 [28 U.S.C. § 2412(d)(2)(A)].

> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title [11 U.S.C. §§ 101 *et seq.*], the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

-13-

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106 (emphasis added).

"Notwithstanding the bankruptcy court's power to award damages under 11 U.S.C. § 362(k)(1) and its statutory contempt powers under 11 U.S.C. § 105(a), a court may not award damages against [a governmental unit] unless sovereign immunity has been expressly and unequivocally waived" and "punitive damages are expressly excepted from the waiver of sovereign immunity". Duby v. United States (In re Duby), 451 B.R. 664, 670-671 (B.A.P. 1st Cir. 2011), citing In re Rivera Torres, 423 F. 3d 20, 26 (1st Cir. 2005) (holding that the IRS was immune from award of emotional distress and damages as contempt sanction for violation of the discharge injunction because "Congress has not definitely and unequivocally waived sovereign immunity under [11 U.S.C. § 106]"). Also see In re Schroeder, 2009 Bankr. LEXIS 3498, 2009 WL 3526504, 62 Collier Bankr. Cas. 2d 1279 (Bankr. D. Neb. 2009) (holding that sovereign immunity is not a defense that can be asserted by an agency that has violated the automatic stay, but punitive damages are not available against the State).

Therefore, no punitive damages can be awarded against PR Treasury pursuant to 11 U.S.C. § 106(a)(3). Although the PR Treasury Department waived its sovereign immunity in this case by filing its *Proof of Claim* No. 10-1, this court "may issue against [it] an order, process, or judgment ... including an order or judgment awarding a money recovery, **but not including an award of punitive damages**." 11 U.S.C. § 106(a)(3) (emphasis added). Consequently, this court lacks jurisdiction under 11 U.S.C. § 106 to impose punitive damages against the Commonwealth of Puerto Rico or its governmental units like PR Treasury.

Conclusion

In view of the foregoing, the *Motion to Dismiss* filed by the PR Treasury Department (Docket No. 12) is hereby granted as to the dismissal of the punitive damages but denied as to its liability for willfully violating the automatic stay. Hence, the Plaintiff's claim for punitive

damages is hereby denied and dismissed. The court will schedule an evidentiary hearing to consider the damages resulting from the violation of the automatic stay.

SO ORDERED.

Partial judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 19th day of June, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge

-15-